UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C.A. NO.: 03-12298-WGY

ERMANN SULLY,
                              Plaintiff

v.

FABIANO ESTRELA, STEPHEN MORSE,
and TOWN OF RANDOLPH,
                              Defendants.

**PRETRIAL MEMORANDUM**

1.     **Evidence to be Offered Trial:**

A. <u>Plaintiff</u>:

On April 20 and 21, 2001, the plaintiff, Ermann Sully ("Sully") was a patron of the Copa

Grande Nightclub ("Copa") in Randolph.  The plaintiff first encountered the defendant, Officer

Fabiano Estrela near the coat check and was told by Officer Estrela to get back in the club or

leave.  Sully went back into the club.  Later, Sully was speaking with Rose Etienne ("Etienne")

who was in the club looking for her sister. A security bouncer, Scott Seto ("Seto") pushed into

Etienne and rudely yelled at her to move while pushing her into Sully.  Seto told Sully to leave

the bar after Sully told Seto that he did not have to push Etienne.  Sully agreed to leave.  Sully

was being pushed towards the door by Seto and Sully asked him not to push him because he was

leaving.  On Sully's way out, Bony Alexis ("Alexis") stopped Sully and asked him what was

going on.  Sully told Alexis he was leaving.  Officer Estrela then grabbed Sully and pushed him

outside.  Officer Estrela attempted to provoke Sully by stepping on his toes and getting in his

face but it did not work.  Officer Estrela physically assaulted Sully through the use of excessive

force.  Sully did not resist arrest.  Officer Estrela told Sully that he would make Sully's life

miserable if he were to say anything as he continued to assault, batter, falsely arrest and handcuff him. A police cruiser arrived at which time Officer Estrela took Sully to the cruiser and further abused Sully. Alexis told Officer Estrela that Sully did not hit him and that he was not pressing charges. Sully was taken to the Randolph Police Station and booked for Assault and Battery and Assault and Battery with a Dangerous Weapon, a shod foot, on Bony Alexis.

Shortly after placing Sully under arrest, Officer Estrela knew that Sully did not hit or kick Alexis but he still had him taken to the police station and booked. The booking report for the Assault and Battery with a Dangerous Weapon arrest did not make any reference to Sully being intoxicated. In addition, almost two days after the arrests, Officer Estrela went into work on his day off and changed his report regarding Sully being intoxicated. No one was informed that Officer Estrela changed the report until it came out in depositions in this civil case. Sully's defense counsel was not provided with that information at any time during the criminal proceedings against him. Officer Estrela never obtained a written statement from Alexis supporting the charges against Sully. Sully was released after paying the magistrate's fee and he was driven by his friend back to the Copa parking lot to retrieve his car.

The defendant, Officer Stephen Morse received a radio dispatch informing him that Sully was being released from jail as a result of an arrest earlier that night and that Sully may retrieve his vehicle from the Copa parking lot. Officer Morse was further informed from dispatch that Sully would be unable to drive due to his intoxication. Officer Morse asked dispatch if Sully had been warned not to drive and dispatch said no. Acting Chief Paul Porter testified in deposition that the usual practice and good police practice is to warn an individual who is intoxicated and released on bail not to drive. Officer Morse wrote in his formal report that he received the dispatch regarding Sully at approximately 2:40. According to the booking report, signed by

Clerk Foley, Sully was not bailed until 2:45. Lieutenant Connor testified that Sully left five minutes after being bailed. Additionally, Officer Estrela radioed Officer Morse just before Officer Morse pulled Sully over. Lt. Connor testified at his deposition that Sully was arrogant, argumentative and that he thought the Randolph Police were a big joke. The Randolph Police Department arranged for Sully to be arrested for a second time for the purposes of harassment, embarrassment and humiliation and to deprive him of his liberty under the color of law. Sully was not offered to be taken to an alcohol treatment facility nor was he placed in protective custody following his being bailed.

Shortly after leaving the parking lot, Sully was pulled over by Officer Morse. Officer Morse pulled Sully over and requested Sully perform three field sobriety tests. Sully performed and passed each test, however Officer Morse placed Sully under arrest and charged him with Operating Under the Influence and Operating to Endanger. Sully was again transported to the Randolph Police Station and booked.

Sully visited the Emergency Department at Brigham and Women's Hospital on April 21, 2001 for treatment of the injuries sustained as a result of Officer Estrela's abusive conduct. Sully was diagnosed with cervical and lumbar strain status post assault. Sully was advised to stay out of work for a few days. Sully sought additional medical treatment including psychiatric care following the incident as a result of post traumatic stress disorder, sleep problems, irritability, and anxiety.

On July 13, 2001, Sully was scheduled for trial on all charges brought against him for the events of April 21, 2001. The Assistant District Attorney was not informed that Officer Estrela had changed his police report after Sully was arrested the second time regarding Sully being under the influence of alcohol. Additionally, the arrest report was changed at some point from

simple assault to assault and battery with a dangerous weapon.  The Assistant District Attorney offered Sully the option of plea bargaining as follows:  1) the charge of Assault and Battery and Assault and Battery with a Dangerous Weapon would be dismissed and the Operating Under the Influence would be continued without a finding; or 2) the Operating Under the Influence would be dismissed and Sully could plea on the other charges.  If Sully did not accept either of these options the Assistant District Attorney would pursue convictions on both cases.  Sully refused to plea.  At a bench trial, the charges of Assault and Battery and Assault and Battery with a Dangerous Weapon were addressed first.  Sully's attorney produced an affidavit from the alleged victim, Alexis, which stated that at no time did Sully strike or kick him nor did Alexis ever state anything to the contrary to the police officers.  Sully's attorney made a motion to dismiss, which was allowed.  After a full bench trial, the presiding judge found Sully not guilty of Operating Under the Influence and Operating to Endanger.

The plaintiff will offer into evidence that a police report was changed to begin a cover-up by the Randolph Police Department of the unlawful arrests of the plaintiff.  The defendants are still working to cover-up the unlawful arrests by failing to produce all requested discovery.  During the discovery phase, the defendant, Town of Randolph, was asked whether they could find out exactly what changes were made to the police report.  Plaintiff was told there was no way to retrieve the information that was changed.  Plaintiff even asked if he could have his own expert examine the computer and program but he was denied.  After the discovery period was long over, the defendant produced a new report with what was allegedly the information from the original police report.  This new report was printed on December 10, 2004 however it was not produced to the plaintiff until early January 2005.  The defendants have a history of holding on to information and not producing until much later after it was requested.

The plaintiff will also offer into evidence Randolph Police Department's custom of violating people's civil rights by way of introducing evidence on the numerous claims made and cases filed against the town and the individual defendants.  Additionally, the plaintiff will show the Randolph Police Department sets up people for wrongful arrest including the executive secretary of the Town of Randolph, Paul Connors.

Plaintiff is seeking redress under the United States Constitution, the Massachusetts Declaration of Rights and the Massachusetts Tort Claims Act.  The Plaintiff is seeking compensatory damages from the Defendants for violations of his civil rights guaranteed and protected under the United States Constitution and the Massachusetts Declaration of Rights, assault and battery, negligence, false imprisonment, malicious prosecution, abuse of process and infliction of emotional distress, all arising out of the unconstitutional, wrongful and unlawful conduct of the Defendants, Fabiano Estrela and Stephen Morse.  The plaintiff is also seeking attorney fees and punitive damages for the unconstitutional, wrongful and unlawful conduct of the defendants.

B.  Defendant:

The defendants expect to introduce evidence establishing that plaintiff's arrests by Randolph police officers Fabiano Estrela and Stephen Morse in the early morning hours of April 21, 2001, for assault and battery with a dangerous weapon and operating a motor vehicle under the influence and so as to endanger, respectively, were supported by the requisite probable cause and effected without excessive force or collusion.

The defendants further expect the evidence to demonstrate that both arresting officers were capable and well-trained, and that the Randolph police department had not received any

complaints alleging false arrest or excessive force against either officer prior to the events at issue.

Specifically, the evidence shall establish that on April 20-21, 2001, officer Estrela worked a paid detail from 10:00 P.M. to 2:00 A.M. at the Copa Grande nightclub in Randolph at an event known as Caribbean or Haitian night, which was promoted by one Bony Mike Alexis. Additional civilian security was provided in-house, as directed by Stephen Mahoney and by F.B.S. Security, owned by Scott Seto, a Brookline police officer who was also personally present.

At some point between approximately 11:30 – 12:00, officer Estrela witnessed an argument between plaintiff and a female, which he broke up. At some later point, plaintiff became involved in separate arguments with Seto, who observed plaintiff to be intoxicated, and Alexis. Estrela also witnessed a disturbance on the dance floor in which plaintiff attempted to punch another male.

Estrela took plaintiff, who was visibly upset, outside the club, pending an investigation of what had transpired. Alexis then told Seto, Mahoney and Estrela that plaintiff had punched and kicked him. Mahoney also relayed this information to Estrela. Upon this information, Estrela determined to arrest plaintiff for assault and battery with a dangerous weapon (shod foot).

Plaintiff reacted violently to Estrela's notice of arrest and failed to cooperate with handcuffing. Estrela employed a take-down technique to bring plaintiff to the ground without injury, handcuffed him and placed him in a cruiser for transportation to the police station by another officer.

At booking, plaintiff was non-cooperative and appeared intoxicated. He was placed in a detention cell, where he slept for approximately two hours, until he was bailed and released to a

female companion, Rose Etiene. At time of release, plaintiff still appeared intoxicated to the officer in charge, Lt. Connor, who therefore made a radio transmission that plaintiff was intoxicated and might attempt to drive a vehicle from the Copa Grande parking lot and should not be permitted to do so, due to his state. At that time, Connor did not know whether plaintiff in fact had a car with him.

Officer Morse responded to the Copa Grande parking lot as a result of this transmission. He intended to engage plaintiff prior to his attempting to drive, if in fact that proved to be his intention, in order to assess his sobriety and if appropriate, to direct him not to drive. Plaintiff drove off, however, before Morse could do so.

Morse thereafter followed plaintiff's vehicle, noting it to be proceeding in an erratic manner. He thereafter pulled plaintiff over and administered field sobriety tests, consistent with his training and certification, which plaintiff failed. Morse therefore arrested plaintiff, without use of force, and notified him of his right to take a breathalyzer, which he refused. The booking officer for the second arrest noted that plaintiff appeared intoxicated at that time.

The evidence overall will show that each arrest was justified as an independent event, and that there was no collusion or attempt to "set-up" plaintiff for arrest, as alleged.

2. **Statement of Facts**:

1.      The address of the Randolph Police Station is 41A South Main Street, Randolph, Norfolk County, Commonwealth of Massachusetts.

2.      At all times relevant to the events, Fabiano Estrela ("Estrela") was employed by the Town of Randolph as a police officer.

3.      At all times relevant to the events, Stephen Morse ("Morse") was employed by the Town of Randolph as a police officer.

4.      Ermann Sully ("Sully") was a patron at the Copa Grande Nightclub on April 21, 2001.

5.      Estrela was working a paid detail at the Copa Grande Nightclub on April 21, 2001.

6.      Estrela placed Sully under arrest for assault and battery with a dangerous weapon.

7.      At the Randolph Police Station, Sully was booked for Assault and Battery and Assault and Battery with a Dangerous Weapon, a shod foot, on Bony Alexis.

8.      Plaintiff was released from police custody after posting bail on April 21, 2001.

9.      Sully was driven back to the Copa Grande Nightclub by Rose Etienne.

10.     Sully entered a vehicle and exited the parking lot of the Copa Grande Nightclub.

11.     Sully was subsequently stopped and arrested by Officer Morse for Operating Under the Influence of Liquor and Operating to Endanger.

12.     Sully was again transported to the Randolph Police Station.

13.     Sully was found not guilty after a bench trial of Operating Under the Influence, the Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002221 (OUI/OTE).

14.     The plaintiff served a purported M.G.L. c. 258, sec. 4 Presentment letter dated April 4, 2003, required by G.L. c. 258 §4, on the Chairman of the Board of Selectman for the Town of Randolph on April 8, 2003 and on Paul Connors, Executive Secretary for the Town of Randolph on April 10, 2003.

15.     The "executive officer" of the Town of Randolph failed to either deny Sully's claim in writing or reach final arbitration, settlement, or compromise of Sully's claim within six months after the date upon which said claim was presented.

16.     Estrela received a copy of the Randolph Police Department Manual of Rules and Regulations for the government of the Police Department as well as Policies and Procedures and Duties by Rank and Assignment on July 5, 1999.

17.     Morse received the Randolph Police Department Manual of Rules and Regulations for the government of the Police Department on September 16, 1996.

3.  **Contested Issues of Fact**:

A.  Plaintiff:

1.  There was no mention of Sully's level of intoxication in the booking report for the arrest for Assault and Battery with a Dangerous Weapon.

2. Officer Morse had received a radio dispatch informing him that Sully was being released from jail as a result of an arrest earlier that night and that Sully may retrieve his vehicle from the Copa parking lot.

3. Officer Morse was informed from dispatch that Sully would be unable to drive due to his intoxication.

4. The Randolph Police Department and the members thereof conspired to arrest Sully for operating under the influence of alcohol and operating to endanger.

5. Sully was not under the influence of alcohol at the time of the second arrest.

6. Sully passed the field sobriety tests requested of him by Officer Morse.

7. Officer Estrela changed his police report on his day off, April 22, 2001, at approximately 11:17 am to 11:22 am regarding Sully being under the influence of alcohol.

8. Attorney Nedder offered the following plea arrangements to Sully: either the charge of Assault and Battery and Assault and Battery with a Dangerous Weapon would be dismissed and the OUI would be continued without a finding, or she would dismiss the OUI and look for a plea on the other charges. If Sully was not in acceptance of this, she would pursue convictions on both cases.

9. Sully refused to plea.

10. The case, the Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002223 (A&B/A&B w/ DW), was dismissed after Sully offered into evidence at trial the Affidavit of Bony Alexis.

11. Estrela received a written reprimand February 12, 2003 regarding an incident on December 19, 2002 in which he admitted referring to an Asian man as a "friggin retard."

12. Officer Estrela worked as a residential counselor at the Department of Mental Health.

13. Estrela was admonished for creating an incident in which he pointed a gun at Jason Warren on April 23, 2000 and not reporting said incident.

14. Town of Randolph was sued in case of Michael Laforte v. Town of Randolph, Docket No. NOCV1982-35990, filed on March 11, 1982 for personal injury/negligence.

15. Town of Randolph was sued in case of James Baron v. Town of Randolph, Docket No. NOCV1983-38726, filed on January 18, 1983 for action against Commonwealth/ municipality.

16. Town of Randolph was sued in case of Massachusetts Citiz., et al. v. Everett, City of, et al, Case No. 1:91-cv-12416-ADM, filed on September 18, 1991 for civil rights action.

17. Town of Randolph was sued in case of Turner v. Town of Randolph, et al, Case No. 1:00-cv-10053-RGS, filed on January 11, 2000 for civil rights action.

18. Town of Randolph was sued in case of Czerwonka v. Town of Randolph, et al, Case No. 1:00-cv-12550-WGY, filed on December 15, 2000 for civil rights action.

19. A claim was made by Erin Mulligan on June 2, 2000 against the Town of Randolph for violation of Massachusetts Tort Claim Act, M.G.L., c. 258, section 4, as a result of negligence by the Town of Randolph, causing Miss Mulligan embarrassment, humiliation and emotional distress.

20. A claim was made by James Grady on June 2, 2000 against the Town of Randolph for violation of Massachusetts Tort Claim Act, M.G.L., c. 258, section 4, as a result of negligence by the Town of Randolph, causing Mr. Grady embarrassment, humiliation and emotional distress.

21. A claim was made by Roody Jocelyn on September 27, 1999 against the Town of Randolph for violation of Massachusetts Tort Claim Act, M.G.L., c. 258, section 4, as a result of negligence by the Town of Randolph, causing Mr. Jocelyn financial and emotional damage.

22. Dr. Chinman was a treating physician and can state his opinion as to the injuries Sully suffered and the causation of said injuries.

23. Dr. Chinman is an expert witness.

24. At some point in the early morning hours of April 21, 2001, Estrela took Sully out of the Copa Grande Nightclub.

25. At one point during the arrest, Sully was lying face-down on the ground and was handcuffed by Estrela.

26. Officer Estrela took Sully to a police cruiser, which transported him to the Randolph Police Station.

27. Estrela does not recall seeing Sully with a drink in his hand at any time that night.

28. After leaving the parking lot, Sully was pulled over by Officer Morse.

29. Officer Morse pulled over Sully and requested Sully perform three field sobriety tests.

30. Officer Morse placed Sully under arrest and charged him with Operating Under the Influence and Operating to Endanger.

31. A bench trial on the matter of Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002221 was held on July 13, 2001 and was continued on July 16, 2001.

32. The District Attorney who prosecuted Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002221 (OUI/OTE) and Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002223 (A&B/ABDW) was Attorney Paula Nedder.

33. Sully was represented by Attorney Frank Camera in Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002221 (OUI/OTE) and Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002223 (A&B/ABDW).

34. The alleged victim, Bony Alexis, signed an Affidavit which stated that at no time did Sully strike or kick him nor did Alexis ever state anything to the contrary to the police officers.

35. Police Polices and Procedures Manual, Policy and Procedure #420, Preliminary Investigations and Report Writing states that an officer making a preliminary investigation should not rely on his memory but should note all useful information obtained and, at a minimum, should make a written record of the following data:
    a. weather conditions and visibility, including the location and distance from the nearest street light or artificial lighting and whether the lights were on;
    b. name, address and telephone number of victims and witnesses;
    c. time and location of any interviews of the victim or witnesses and a brief statement as to what they heard or observed (if such statement appears to be highly informative and the crime is of a serious nature, a verbatim record should be made); and
    d. any other information that the officer believes may be useful for the apprehension of the criminal suspect and his subsequent prosecution.

36. Police Polices and Procedures Manual, Policy and Procedure #440, Arrests, states that arresting officers will make a full and complete report of any arrests made, with or without warrants, in accordance with standard department procedures.

37. Police Polices and Procedures Manual, Policy and Procedure #660, Booking Procedures and the Holding Facility, Prisoner Processing, states that when officers transporting a prisoner arrive at the police facility, they shall notify the dispatcher over the cruiser radio of their arrival.

38. Police Polices and Procedures Manual, Policy and Procedure #670, Protected Custody of Incapacitated Persons, states that individuals who are released on bail following an arrest for driving under the influence of alcohol may be placed in protective custody if they are still "incapacitated" as defined in c. 111B.

39. The cost of the trial tape from the Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002221 (OUI/OTE) and the Commonwealth of Massachusetts v. Ermann Sully, Quincy District Court, Docket No. 0156CR002223 (A&B/ABDW) was $39.00.

40. The fee for reinstatement of Sully's license was $50.00.

41. The charge for operating under the influence of alcohol was listed in Sully's NCPS credit report.

42. Medical records and bills for services rendered by Codman Square Chiropractic office were certified by Joel M. Charles on January 10, 2005 as true and accurate and were forwarded to defense counsel, Joseph L. Tehan, Jr., Esq. on January 10, 2005.

43. Medical records for services rendered by Brigham and Women's Hospital were certified by Lyris McCray on January 3, 2005 as true and accurate and were forwarded to defense counsel, Joseph L. Tehan, Jr., Esq. on January 7, 2005.

44. Medical bills for services rendered by Brigham and Women's Hospital were certified by Diana Volpe on March 11, 2003 as true and accurate and were forwarded to defense counsel, Joseph L. Tehan, Jr., Esq. on January 6, 2005.

45. Medical records for services rendered by Gary A. Chinman, M.D., Brigham and Women's Hospital Department of Psychiatry were certified by Gary A. Chinman, M.D. on December 24, 2004 as true and accurate and were forwarded to defense counsel, Joseph L. Tehan, Jr., Esq. on January 6, 2005.

46. Medical bills for services rendered by Gary A. Chinman, M.D., Brigham and Women's Hospital Department of Psychiatry were certified by Diana Volpe on June 9, 2003 as true and accurate and were forwarded to defense counsel, Joseph L. Tehan, Jr., Esq. on January 6, 2005.

47. Transcript of tower tape, created by Susan Lozzi is an accurate transcription of what was stated on the tape.

48. Listing of times of communications on the tower tape created by Randolph Police Department is an accurate listing of times of said communications.

    B. Defendant:

    a.    Whether plaintiff's arrests were racially motivated.

    b.    Whether probable cause existed for Estrela's arrest of plaintiff for assault and

battery with a dangerous weapon and assault and battery.

c.    Whether Estrela used reasonable force to effectuate the arrest of the plaintiff.

d.    Whether probable cause existed for Morse's arrest of plaintiff for operating under the influence and operating to endanger.

e.    Whether Estrela utilized threats, intimidation and coercion in his arrest of plaintiff.

f.    Whether Morse utilized threats, intimidation and coercion in his arrest of plaintiff.

g.    Whether Estrela utilized criminal process without probable cause and for an improper ulterior motive.

h.    Whether Estrela engaged in an unprivileged touching of the person of the plaintiff.

i.    Whether Estrela negligently inflicted emotional distress upon the plaintiff.

j.    Whether Estrela intentionally inflicted severe emotional distress upon the plaintiff.

k.    Whether Morse utilized criminal process without probable cause for an improper ulterior purpose.

l.    Whether Morse negligently inflicted emotional distress upon the plaintiff.

m.    Whether Morse intentionally inflicted severe emotional distress upon the plaintiff.

n.    Whether Estrela negligently arrested plaintiff.

o.    Whether Morse negligently arrested plaintiff.

p.    Whether plaintiff was contributorily negligent during his arrests.

q.    Whether Town of Randolph negligently trained and supervised Estrela and Morse.

r.    Whether plaintiff sustained damages as a result of defendants' conduct.

s.    The amount of plaintiff's damages, if any.

4. **Jurisdictional Questions**:

A. <u>Plaintiff</u>:

None.

B. <u>Defendant</u>:

Whether the plaintiff, pursuant to G.L. c. 258, §4, adequately notified the Town of Randolph that it may be subject to a claim of negligent training and supervision of Officer Estrela and Officer Morse as a result of the incidents that give rise to this action.

5. **Questions Raised by Pending Motions**:

A. <u>Plaintiff's possible motions in limine to be filed</u>:

a.    to exclude mention of and/or reference to plaintiff's marital status, his wife and Marilyn Bradshaw

b.    to exclude mention of and/or reference to plaintiff's CORI matters which did not result in conviction and/or does not come within limits of general laws

c.    to exclude mention of and/or reference to plaintiff's refusal to take breathalyzer test

d.    to exclude use of police report forwarded to plaintiff's counsel in January 2005 which allegedly provides a portion of Officer Estrela's original narrative report

e.    to preclude the defendants from questioning Bony Alexis regarding whether plaintiff somehow reached him and/or offered him incentives to testify on plaintiff's behalf because defendants have not offered one scintilla of evidence to support such a claim and the defendants have deposed Bony Alexis which produced nothing on such a claim.

f.    to sequester witnesses

B. <u>Defendant's possible motions in limine to be filed</u>:

a.    Defendants expect to file a motion to bifurcate the trial of the underlying claims against the arresting officers from the negligent training and supervision claims against the Town, in furtherance of judicial economy and to prevent introduction of prejudicial propensity evidence pursuant to Fed.R.Evid.403.

    b.  Defendants expect to file a motion *in limine* to preclude any evidence or argument made by the plaintiff for a violation of his Fifth Amendment substantive due process rights as a result of his arrests, as such claim is legally untenable.

    c.  Defendants expect to file a motion *in limine* to preclude any evidence or argument in support of Counts VII and XII (intentional infliction of emotional distress), as such claim is not legally tenable.

    d.  Defendants expect to file a motion *in limine* to permit introduction of plaintiff's prior and subsequent arrests, as relevant to his claim for emotional distress damages arising out of his arrests at issue.

    e.  Defendants expects to file a motion *in limine* to permit introduction of plaintiff's extramarital affairs, as both relevant to his emotional distress claim and as a basis for his resisting Estrela's arrest.

6.  **Issues of Law, Evidentiary Questions and Supporting Authority**:

    A.  <u>Plaintiff</u>:

      1.  Frank Camera, Esq. should be able to testify to all matters of which he has personal knowledge and which are relevant to the plaintiff's claims including attorney fees for criminal representation of the plaintiff.

      2.  Joel N. Charles was a treating chiropractor of the plaintiff and should be able to testify to all matters regarding his personal treatment of the plaintiff including information he used for treatment and diagnosis of plaintiff pursuant to M.G.L. c. 233, §79G, F.R.E. 803(4), 803(4) and 803(6).

      3.  Certified medical records, reports and bills of the plaintiff's treatment as a result of the incident should be allowed into evidence to show information relied upon to make diagnosis and treat the plaintiff pursuant to M.G.L. c. 233, §79G, F.R.E. 803(4), 803(4) and 803(6).

      4.  Certified medical report of Dr. Chinman should be allowed into evidence to show information relied upon to make diagnosis and treat the plaintiff pursuant to M.G.L. c. 233, §79G, F.R.E. 803(4), 803(4) and 803(6).

      5.  Curriculum Vitae should be allowed into evidence to show the credentials and qualifications of the treating physician and/or expert witness.

      6.  Affidavit of Bony Alexis should be allowed into evidence to show what actually occurred prior and during the arrest of the plaintiff for assault and battery on Mr. Alexis as well as to show what happened at the criminal trial.  The affidavit is relevant to the plaintiff's claims for and arising out of the unlawful arrest. Additionally, the affidavit may be used not to prove the truth of the matter asserted in

the affidavit but rather to support plaintiff's claims and to show that they are not a recent contrivance.  <u>Commonwealth v. Douglas</u>, 354 Mass. 212 (1968).

7.  Audiotapes of criminal trial of plaintiff should be allowed into evidence to show what occurred at the criminal trial of the plaintiff and are relevant to support plaintiff's claims for and arising out of the unlawful arrests.  The court should have the benefit of a chaulk of the transcript of said tape to assist them.

8.  Transcript of the tower tape with the agreed upon time record of same should be allowed into evidence to show the times of the tower communications as they are relevant to the claim the Randolph Police Department set the plaintiff up for his second arrest.  If the times are to be contested the defendants may attempt to do so a trial.

9.  Written reprimand, notice of disciplinary findings and determinations regarding Officer Estrela should be allowed into evidence pursuant to F.R.E. 404(b), 406, and 608.

10.  Internal Affairs investigation report and file regarding complaint of Matthew Warren against Officer Estrela should be allowed into evidence pursuant to F.R.E. 404(b), 406, and 608.

11.  Randolph Police Department towing information for plaintiff's car should be allowed into evidence because it is relevant to the issue of damages.

12.  Each police incident report and all variations thereof produced in this case should be allowed into evidence pursuant to recorded recollection and business records exception to hearsay rule, F.R.E. 803(5) and (6).

13.  Each booking report and all variations thereof produced in this case should be allowed into evidence pursuant to recorded recollection and business records exception to hearsay rule, F.R.E. 803(5) and (6).

14.  Each police officer report and all variations thereof produced in this case should be allowed into evidence pursuant to recorded recollection and business records exception to hearsay rule, F.R.E. 803(5) and (6).

15.  Randolph Police Department Log Q Sheets produced in this case should be allowed into evidence pursuant to recorded recollection and business records exception to hearsay rule, F.R.E. 803(5) and (6).

16.  Documentation regarding other claims and lawsuits against Town of Randolph for similar conduct should be allowed into evidence to show that the Town had knowledge of the police department's propensity and custom of violating people's rights prior to the incident involving the plaintiff and to show that such behavior is custom.

17.  Personnel file of Stephen A. Morse including that portion relating to an event which happened while Office Morse was in the navy should be allowed into evidence pursuant to F.R.E. 404(b), 406, and 608.

18.  NCPS Credit Report and letter should be allowed into evidence because it is relevant to the issue of damages.

B.  <u>Defendant</u>:

a.      Whether plaintiff's c. 258, § 4 claim letter provided adequate notice of a failure to train and supervise claim against the Town.

b.      Whether plaintiff's arrests satisfy the elements of an intentional infliction of emotional distress claim.

7.  **Requested Amendments to Pleadings**:

   <u>Plaintiff and Defendant</u>:

   None.

8.  **Additional Matters to Aid in Disposition of Action**:

   The case has been referred to mediation pursuant to L.R. 16.4.  The mediation is scheduled for January 31, 2005.

9.  **Length of Trial**:

   A.  <u>Plaintiff</u>:

   Two week half days jury trial.

   B.  <u>Defendant</u>:

   6-7 half days.

10.  **Names and Addresses of Witnesses**:

   A.  <u>Plaintiff</u>:

   The plaintiff intends to call the following witnesses at trial:

1.    Ermann Sully – Factual witness
      145 High Street
      Randolph, MA 02368
      617-868-0493

2.    Rose Etienne – Factual witness
      169 Wood Avenue
      Hyde Park, MA
      617-364-3804

3.    Bony Alexis – Factual witness
      1014 Indian Trace Circle
      Riviera Beach, FL 33407
      561-767-6459

4.    Frank D. Camera, Esq. – Factual witness
      21 McGrath Highway, Suite 402
      Quincy, MA 02169
      617-770-9488

5.    Fabiano Estrela – Factual witness
      Randolph Police Department
      41 South Main Street
      Randolph, MA 02368
      (781) 963-1212

6.    Stephen Morse – Factual witness
      Randolph Police Department
      41 South Main Street
      Randolph, MA 02368
      (781) 963-1212

7.    Paul Porter – Factual witness
      Randolph Police Department
      41 South Main Street
      Randolph, MA 02368
      (781) 963-1212

8.    Kevin Connor – Factual witness
      Randolph Police Department
      41 South Main Street
      Randolph, MA 02368
      (781) 963-1212

9.    Edward O'Leary – Factual witness
      Randolph Police Department

 41 South Main Street
 Randolph, MA 02368
 (781) 963-1212

10. Gary A. Chinman, M.D. – Medical as a treating physician and expert witness
 Brigham and Women's Hospital
 Department of Psychiatry
 75 Francis Street
 Boston, MA

The plaintiff may call the following witnesses at trial:

11. Scott Seto – Factual witness
 350 Washington Street
 Brookline, MA 02446
 (617) 548-6469

14. Stanley Osias – Factual witness
 Securitas Security Services, USA, Inc.
 One Harborside Dr., Ste. 302 South
 Boston, MA 02128-2907
 617-568-8768

15. Christophe Daniel – Factual witness
 Florida

16. Paula Nedder and other Assistant District Attorneys who worked on criminal
 cases against plaintiff – Factual witness
 Quincy District Court
 Quincy, MA

17. James J. Foley – Factual witness
 Quincy District Court
 Quincy, MA 02169

B. <u>Defendant</u>:

The defendants intend to call the following witnesses at trial

1. Fabiano Estrela
 Randolph Police Department
 41 South Main Street
 Randolph, MA 02368
 (781) 963-1212

2. Stephen Morse

Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

3.    Paul Porter
Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

4.    Kevin Connor
Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

5.    Marc Abramson
Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

6.    Scott Seto
350 Washington Street
Brookline, MA 02446
(617) 548-6469

7.    Stephen Mahoney
96 Meadow Drive,
Raynham, MA
(781) 389-4667

8.    Thomas Libby
Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

The defendants may call the following witnesses if the need arises:

1.    Dominic Fasoli
Randolph Police Department
41 South Main Street
Randolph, MA 02368
(781) 963-1212

2.      John Sullivan
        Randolph Police Department
        41 South Main Street
        Randolph, MA 02368
        (781) 963-1212

3.      Edward O'Leary
        Randolph Police Department
        41 South Main Street
        Randolph, MA 02368
        (781) 963-1212

4.      James J. Foley
        Quincy District Court
        Quincy, MA 02169

11.     List of Proposed Exhibits in Order of Introduction:

A. <u>Plaintiff</u>:

Agreed upon exhibits:

1. Tower tape from Randolph Police Station
2. Officer Estrela's training history
3. Officer Morse's training history
4. Training package of Stephen A. Morse
5. Presentment letters to Town officials and the defendants
6. Reinstatement of license fee letter
7. Randolph Police Department roster shift sheets for 4/21/01
8. Copy of criminal trial tapes fee receipt

Plaintiff's proposed disputed exhibits:

A. Audiotapes of the criminal trial of the plaintiff
B. Affidavit of Bony Alexis
C. Transcript of tower tape with agreed upon time record of same
D. Each police incident report and all variations thereof produced in this case, including:
   a.   Randolph Police Department incident report (4/15/04, 13:06, OUI)
   b.   Randolph Police Department incident report (4/15/04, 13:06, A&B w/ DW)
   c.   Randolph Police Department incident report (6/11/01, 12:38, A&B w/ DW)
E. Each booking report and all variations thereof, including:
   a.   6/11/01, 12:20, assault simple

21

       10/13/04, 9:36, A&B w/ DW
  b.  4/21/01, 1:11, A&B w/ DW
  d.  4/21/01, 5:53, A&B w/ DW
  e.  10/13/04, 9:36, OUI
  f.  4/21/01, 3:09, OUI (all variations)
  g.  4/21/01, 3:16, OUI

F.  Each police officer report and all variations thereof, including:

  a.  Estrela Officer report, 4/22/01, 11:23, A&B w/ DW
  b.  Estrela Police report, 6/11/01, 12:20, assault simple
  c.  Estrela Officer report, 10/13/04, 9:35, assault simple
  d.  Estrela Officer report, 4/22/01, 11:23, with handwritten notes on page 3
  e.  Estrela Officer report, 4/15/04, 12:59, assault simple
  f.  Incident report by Estrela – narrative screen computer printout (line by line with dates and times)
  g.  Incident report by Morse – narrative screen computer printout (line by line with dates and times)
  h.  Morse Officer report, 4/21/01, 7:14, OUI
  i.  Morse Officer report, 10/13/04, 9:34, OUI
  j.  Abramson Officer report, 10/13/04, 9:34, OUI
  k.  Morse and Abramson Officer report, 4/15/04, 12:59, OUI

G.  Randolph Police Department Log Q Sheet 10/13/04, 9:35, A&B w/ DW

H.  Documentation regarding other claims and lawsuits against Town of Randolph for similar conduct

I.  Personnel file of Fabiano Estrela

J.  Written reprimand, notice of disciplinary findings and determinations regarding Officer Fabiano Estrela

K.  Internal Affairs investigation report and file regarding complaint of Matthew Warren against Fabiano Estrela

L.  Certified medical records and bills from Brigham and Women's Hospital for Ermann Sully's treatment as a result of this incident

M.  Certified medical records and bills from Codman Square Chiropractic for Ermann Sully's treatment as a result of this incident

N.  Curriculum Vitae of Gary A. Chinman, M.D

O.  Certified medical records and bills from Brigham and Women's Hospital Department of Psychiatry for Ermann Sully's treatment as a result of this incident

P.  Certified medical report of Gary A. Chinman, M.D.

Q.  NCPS Credit Report and letter

R.  Randolph Police Department towing information for plaintiff's car

S.  Personnel file of Stephen A. Morse

The plaintiff may use the following documents as exhibits:

T.  Randolph Police Department Summary Action Code List by number

U.  Fabiano Estrela's diagram of Copa Grande Nightclub area

V.  Scott Seto's diagram of Copa Grande Nightclub area

W. Stephen Morse's diagram of area of arrest
X. Randolph Police Department file regarding A&B w/ DW, including:
   a. Randolph Police Department Form
   b. Criminal Complaint and applications, Docket #0156CR002223, A&B w/ DW and A&B
   c. Booking report, 4/21/01, signed 1:11
   d. Report, prisoner's rights, 4/21/01, 1:11
   e. Summons A&B w/ DW and A&B (Alexis)
   f. Summons (Seto)
   g. Memorandum to Randolph from Paula Nedder
   h. Pg. w/ CORI adult appearances
   i. Tender of plea
   j. Court folder checklist
   k. RPD pictures of plaintiff
   l. MA Registration of motor vehicle (and all variations thereof)
   m. Suicide candidates display
Y. Randolph Police Department file regarding OUI, including:
   a. Memo to Bill
   b. Criminal Complaint, 0156CR002221, OUI, with application and application with court citation (and all variations thereof)
   c. Police certification of license disposition
   d. Memorandum to Randolph Police Department from Paula Nedder
   e. Stat. rights form
   f. Randolph Police Department complaint printout, re: breathalyzer test
   g. CORI of plaintiff
   h. Tender of plea
   i. Court folder check list
   j. End of adult arrest report sheet
   k. Civil restraining order
   l. FBI report
   m. Randolph P.D. computer printout, re: breathalyzer test
   n. Handwritten memorandum to Lt. Porter from Paula Nedder, ADA
   o. Globe article page
   p. Registration of motor vehicle printout
   q. Picture of Plaintiff – Randolph Police Department
   r. INS record printout
Z. Police Policy and Procedure Manual
   a. Introduction
   b. Table of Contents
   c. 100 – LETN Training
   d. 200 – Internal Affairs
   e. 400 – Use of Force
   f. 420 – Preliminary Investigations
   g. 421 – Interviewing Witnesses and Victims
   h. 422 – Eyewitness Identification
   i. 440 – Arrest

         j.   445 – Arrest Warrants
         k.  460 – Testifying in Court
         l.   505 – Hate Crimes
         m. 650 – Transportation of Prisoners
         n.  660 – Booking Procedures and the Holding Facility
         o.  670 – Protective Custody of Incapacitated Persons
         p.  850 – Criminal Offender Record Information (C.O.R.I.)
         q.  900 – Response to Calls
         r.   Index

AA.  Police Rules and Regulations Manual
        a.      Table of Contents
        b.      Introduction
        c.      Law Enforcement Code of Ethics
        d.      Professional Conduct and Responsibilities
                 Subsections:
                 a.    Privacy and Off-Duty Conduct
                 b.   Conduct Unbecoming an Officer
                 c.   Conflict of Interest
                 d.   Violating Conflict of Interest Law
                 e.   Department Correspondence
                 f.   Mailing Address
                 g.   Interfering with Course of Justice
                 h.   Off-Duty Employment
        e.      Orders
                 Subsections:
               a. Unlawful Orders
               b. Conflicting Orders
               c. Unjust or Improper Orders
               d. Instructions from Dispatcher
               e. Types of Orders
               f. Insubordination
        f.      Immortality
        g.      Criminal Conduct
        h.      Department Vehicles
        i.      Upkeep of Police Manual
        j.      Reports
                 Subsections:
               a. Filing Reports
               b. Falsifying Records
               c. Withholding Evidence
               d. Feigning Illness or Injury
               e. Departmental Records/Reports/Citations
               f. Line-of-Duty Disabilities

BB.  Miscellaneous
        a.      Patrolman duties and responsibilities
        b.      Dispatcher duties and responsibilities

Defendants proposed disputed exhibits:

CC.    Relevant portions of Officer Estrela's personnel file;
DD.    Relevant portions of Officer Morse's personnel file
EE.    Plaintiff's Booking Photos
FF.    Randolph Police Department Policy and Procedure Manual
GG.    Randolph Police Department Rules and Regulations Manual.

The parties reserve the right to call any witness and offer any documentary evidence necessary to impeach a witness and/or prove prior consistent or inconsistent statement, including but not limited to answers to interrogatories, responses to requests for production of documents, criminal trial transcripts and deposition transcripts.

PLAINTIFF,                                    DEFENDANTS,
By his attorney,                              By their attorneys,


/s/ Murray P. Reiser                          /s/ Jeffrey T. Blake
_____        _____
Murray P. Reiser, BBO# 416180        Joseph L. Tehan, Jr. BBO# 494020
Law Office of Murray P. Reiser, P.C.      Jeffrey T. Blake BBO# 655773
4 Longfellow Place                            Kopelman and Paige, P.C.
Boston, MA  02114                          31 St. James Avenue
(617)742-1810                                 Boston, MA  02116
                                                      (617) 556-0007